UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMARJIT S. BRAR, et al.,

        Plaintiffs,

    v.

TOM RIDGE, Secretary of the Department of Homeland Security, et al.,

        Defendants.

CASE NO. C04-1401JLR

ORDER

## I.   INTRODUCTION

This matter comes before the court on Plaintiffs' Motion for Award of Attorneys' Fees (Dkt. # 20). Having reviewed the papers filed in support of and in opposition to the motion, the court GRANTS Plaintiffs' motion for the reasons stated below.

## II.   BACKGROUND

Plaintiffs Amarjit S. Brar and his adopted daughter, Virpal Kaur, seek attorneys' fees stemming from this court's prior order granting summary judgment in their favor and finding that Defendants' reasons for revoking Plaintiffs' visa petition and denying Ms. Kaur's visa were contrary to law and an abuse of discretion. Summ. J. Order, Dkt. # 19 at 10-14 (Dec. 22, 2004). Although the Government concedes that Plaintiffs prevailed against Defendant Office of Citizenship and Immigration Services ("CIS") and its

ORDER – 1

officials (collectively the "CIS Defendants"), they oppose Plaintiffs' motion for attorneys' fees, arguing that CIS' decision to revoke the petition was substantially justified because it was at the direction of the Department of State ("State Department") and its officials (collectively the "Consular Defendants") which this court dismissed for lack of jurisdiction. Id. at 5-9.

### III.   DISCUSSION

**A.   Legal Standard**

A party who prevails against the United States in a civil action is entitled to attorneys' fees, court costs, and other expenses under the Equal Access to Justice Act ("EAJA") unless the court finds that the United States' position was "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412 (d)(1)(A). A "prevailing party" is one who has been awarded relief by the court. Buckhannon Bd. of Care & Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001). Once the petitioning party establishes itself as the prevailing party, the burden shifts to the government to prove that its position, both pre-litigation and during litigation, was substantially justified. Mendenhall v. Nat'l Transp. Safety Bd., 92 F.3d 871, 874 (9th Cir. 1996). To meet this burden the government must show that its position had "a reasonable basis in both fact and law." Id.; Comm'r, I.N.S. v. Jean, 496 U.S. 154, 158 n.6 (1990). The fact that the government lost in litigation "does not raise a presumption that its position was not substantially justified." Edwards v. McMahon, 834 F.2d 796, 802 (9th Cir. 1987) (quoting Petition of Hill, 775 F.2d 1037, 1042 (9th Cir. 1985)).

ORDER – 2

**B.     Attorneys' Fees**

Having conceded that Plaintiffs prevailed against CIS on summary judgment, the Government bears the burden of demonstrating that CIS' decision to revoke Plaintiffs' visa petition prior to litigation, and subsequent decision to defend the revocation, are reasonably based in fact and law.  The Government argues that CIS' pre-litigation decision to revoke Plaintiffs' visa petition was substantially justified in light of the Consular Defendants' refusal to grant Ms. Kaur a visa based on her (1) failure to obtain a court order legalizing her adoption and (2) failure to qualify as an orphan given that her natural mother was still living.  Although both grounds for denial are contrary to law and the State Department's Foreign Affairs Manual ("FAM"), the Government argues that CIS was justified in relying on the Consular Defendants' determination because they possess the sole authority to issue visas and interpret foreign law.  Further, the Government contends that the Consular Defendants' decision provided CIS with "good and sufficient cause" to revoke Plaintiffs' petition under 8 U.S.C. § 1155, which grants the Secretary of Homeland Security broad power to revoke a petition "at any time, for what he deems to be good and sufficient cause."[1]

Regardless of whether CIS' pre-litigation conduct of relying on the Consular Defendants' erroneous determination was substantially justified, the court finds that CIS' litigation conduct was not substantially justified.  None of the arguments advanced by the

---

[1] The court notes, however, that CIS has an obligation to provide a petitioner with notice of its intent to revoke a petition prior to revocation, and to provide a petitioner with an opportunity to present evidence in opposition to revocation.  8 C.F.R. § 205.2(b).  As part of their complaint, Plaintiffs alleged that CIS revoked their petition prematurely on the same day that it sent notice of intent to revoke.

ORDER – 3

Government on CIS' behalf during litigation had a reasonable basis in both fact and law.[2] CIS opposed Plaintiffs' summary judgment motion and moved to dismiss initially for lack of jurisdiction. In essence, CIS argued that the court lacked a final agency decision to review because Plaintiffs previously appealed CIS' revocation decision to the Board of Immigration Appeals ("BIA") where their appeal remained pending. Yet, Plaintiffs withdrew their appeal before the BIA issued a decision and as a result, CIS' revocation decision became final. 8 C.F.R. § 1003.4 (providing once appeal is withdrawn "the decision made in the case shall be final to the same extent as if no appeal had been taken."). Thus, the Government's contention that this court lacked a final agency decision to review was unreasonable both factually and legally.

The Government's merits-based arguments that CIS properly revoked Plaintiffs' visa petition also lack a reasonable basis. At summary judgment and as part of its motion to dismiss, the Government defended CIS' decision to revoke Plaintiffs' visa petition based on the two reasons articulated by the Consular Defendants for denying Ms. Kaur's visa: (1) failure to obtain a court order legalizing the adoption, and (2) failure to qualify as an "orphan." Neither reason finds support in fact or law. As the court previously found on summary judgment, CIS' repeated insistence that Ms. Kaur's adoption required a court order "flies in the face" of FAM, Indian law and practice. Summ. J. Order, Dkt. # 19 at 13 (Dec. 22, 2004). FAM contains the State Department's policies and interpretations of foreign law, and consequently guides the actions of its consular

---

[2]The arguments advanced by the Government on the Consular Defendants' behalf, however, were reasonably based in fact and law. The Government argued correctly that this court lacks jurisdiction over the Consular Defendants under the firmly entrenched doctrine of consular non-reviewability, which prevents administrative or judicial review of a consular official's decision granting or denying a visa petition. E.g., Patel v. Reno, 137 F.3d 929, 931 (9th Cir. 1997); Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir. 1986).

ORDER – 4

officials.  With regard to India, it provides that consular officials "will accept" an adoption deed signed by the natural and adoptive parents and registered with the local province's Sub-Registrar, consistent with the Hindu Adoptions and Maintenance Act of 1956.  19 Charles Gordon et al., Immigration Law & Procedure ¶ 446 (Sept. 2004).  Plaintiffs submitted such an adoption deed with their visa petition and later obtained affidavits from three Indian lawyers testifying that the adoption deed complied with Indian law and practice.

Nonetheless, the Government argued for the first time on summary judgment that the Guardian and Wards Act of 1890 governed Ms. Kaur's adoption and required Plaintiffs to follow an extensive administrative procedure before adopting, including working with an Indian-approved adoption agency and appearing before an Indian court, based solely on the Supreme Court of India's decision in Lakshmi Kant Pandey v. Union of India, AIR 1984 SC 469, available at http://www.csa.org.in/SC1984Feb06.htm.  The Government failed to note, however, that the Supreme Court explicitly limited its decision in Lakshmi to cases involving children "living in social or child welfare centres," and excluded "cases of adoption of children living with their biological parents," such as Ms. Kaur, because "biological parents would be the best persons to decide whether to give their child in adoption to foreign parents."  Id. at ¶ 11.  Thus, the one authority the Government relied on to justify CIS' decision to depart from the guidelines contained in the FAM, and revoke Plaintiffs' visa petition for failure to obtain a court order, proved inapposite on further review and as a result, fails to provide a reasonable basis for the Government's litigation position.

The Government's alternative, merits-based argument that CIS properly revoked Plaintiffs' petition based on Ms. Kaur's failure to qualify as an orphan under 8 U.S.C. § 1101(b)(1)(F) also lacks a reasonable basis in fact or law.  To obtain immediate relative

ORDER – 5

status as an "orphan" under this statute, Plaintiffs provided copies of Ms. Kaur's birth certificate, her father's death certificate, and an affidavit from her mother explaining her financial condition and irrevocably releasing her daughter for adoption.  Although this information complied with the statutory requirements and sufficiently satisfied CIS to initially grant Plaintiffs' visa petition, the consular official who interviewed Ms. Kaur at the Embassy recommended revoking the petition because Ms. Kaur "is not an orphan as her natural mother is still alive."  The Government defended this ground for denial on summary judgment despite the fact that the immigration statute clearly provides for a child to qualify as an "orphan" where a surviving parent exists.  8 U.S.C. § 1101(b)(1)(F) (defining "orphan," in part, as a child "for whom the sole or surviving parent is incapable of providing the proper care").  Further, the Government admitted at oral argument that nothing in the statute or corresponding regulations required Ms. Kaur to leave her mother upon being adopted and wait alone for years to obtain a visa.  Thus, the Government's insistence that Ms. Kaur failed to qualify as an "orphan" as a result of living with her mother lacks a reasonable basis.

The Government's final argument that "the regulations and laws surrounding Indian adoptions by United States citizens are complex and ambiguous" and therefore justify its litigation position carries little weight here where the Government has failed to provide an authority that is unclear, ambiguous, or casts doubt on the adoption requirements contained in the FAM or immigration law.  See Oregon Natural Res. Council v. Madigan, 980 F.2d 1330, 1332 (9th Cir. 1992) (awarding fees and rejecting government's argument that the challenged statute was unclear and required a complex analysis); Or. Citizens Against Toxic Sprays, Inc. v. Clark, 720 F.2d 1475, 1481 (9th Cir. 1983) (affirming fee denial where challenged regulation required "exceptional" analysis and the only reported case interpreting it supported the government's position).  While

ORDER – 6

the court recognizes and appreciates that this case required the parties to research foreign law, the court finds that the foreign authorities provided to the court were clear in their application and therefore fail to justify the Government's litigation position.

Having found that the Government's litigation position was not substantially justified, the court awards attorneys' fees in favor of Plaintiffs. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Under EAJA, attorneys' fees for cases filed on or after March 29, 1996 are capped at $125.00 per hour unless the court determines that an increase in the cost of living warrants a higher fee. Id.; 28 U.S.C. § 2412(d)(2)(A). The court finds that the cost-of-living adjustment sought by the Plaintiffs, and undisputed by the Government, is justified here. Courts calculate the cost-of-living adjustment by multiplying (1) the basic EAJA rate by (2) the product of the consumer price index for urban consumers (CPI-U) for the year the fees were earned[3] divided by the March 1996 CPI-U. E.g., Sorenson, 239 F.3d at 1148. The Government does not dispute that this calculation entitles Plaintiffs to an hourly rate of $151.65.[4]

Although the Government does not dispute Plaintiffs' proposed hourly rate or the number of hours Plaintiffs' counsel spent preparing this case (123.29 hours), the Government disputes the extent to which Plaintiffs' award should be reduced based on Plaintiffs' failure to prevail against the Consular Defendants which this court dismissed.

---

[3]Plaintiffs' proposed rate of $188.90 per hour represents the average CPI-U for 2004 when nearly all of Plaintiffs' attorneys' fees were incurred.

[4]This calculation proceeds as follows:
EAJA capped rate ($125.00)  x   $\dfrac{\text{Average CPI-U for 2004 (\$188.90)}}{\text{March 1996 CPI-U (\$155.70)}}$  =  $151.65

ORDER – 7

Order, Dkt. # 19 at 5-9 (Dec. 22, 2004). Plaintiffs concede to losing their claims against the Consular Defendants and propose to reduce their total hours by 20%, while the Government proposes a 75% reduction at a minimum. Neither party provides any explanation for how they arrived at the proposed percentage, and Plaintiffs' counsel's time records are less than clear for purposes of apportionment.[5]

A district court may reduce an attorneys' fee award based on the "limited success" the plaintiffs achieved in the litigation. Sorenson, 239 F.3d at 1147. Deducting attorneys' fees on this ground requires the court to consider (1) whether plaintiff's unsuccessful claims are "unrelated" to the successful claims, and (2) whether the plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. (quoting Hensley, 461 U.S. at 434). An "unrelated" claim is "entirely distinct and separate" from the claims on which plaintiff prevailed. Id. (quoting Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995)). Further, when considering plaintiff's success, the court must focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on litigation." Id. (quoting Hensley, 461 U.S. at 435).

Here, the court finds that Plaintiffs' claims were all related to securing Ms. Kaur's entry into the United States. Plaintiffs' claims for a writ of mandamus, declaratory relief, and injunctive relief all involved "a common core of facts" and were "based on related legal theories." Id. (quoting Hensley, 461 U.S. at 435). Indeed, CIS revoked Plaintiffs'

---

[5]For example, although certain time entries summarize work pertaining only to the Consular Defendants, other time entries are unclear (*i.e.*, "Research and analysis re: jurisdiction issues" which could pertain to the Consular Defendants and the doctrine of consular non-reviewability, or to CIS and the Government's exhauastion of remedies argument), or fail to apportion time between both Defendants (*i.e.*, the amount of time spent drafting discovery or allegations in the complaint pertaining to the Consular Defendants rather than the CIS Defendants). Pritchett Decl., at 3-5.

ORDER – 8

visa petition based on the reasons articulated by the Consular Defendants for refusing to issue Plaintiffs' visa. Consequently, Plaintiffs' claims against the Consular Defendants were related to their claims against the CIS Defendants because they share the same factual and legal underpinnings.

Further, the court finds that Plaintiffs achieved their ultimate goal of obtaining a visa for Ms. Kaur, and the approximately 123 hours Plaintiffs' counsel spent achieving this goal was reasonable. Plaintiffs first filed their petition in April 1999. They waited nearly six years before obtaining an orphan visa, despite complying with Indian adoption requirements and federal immigration laws. The fact that this court lacked jurisdiction over the Consular Defendants and therefore could not order them to issue Ms. Kaur's visa is of no consequence. Ms. Kaur would not currently reside in the United States if her counsel had not filed suit and challenged the Consular Defendants' reasons for denying her a visa. Moreover, the Government has never suggested that the amount of time Plaintiffs' counsel spent preparing this case was unreasonable, excessive, or the result of duplicative efforts. The total number of hours devoted by Plaintiffs' counsel to pursuing this litigation is reasonable in light of Plaintiffs' success. As a result, the court rejects the Government's attempt to reduce Plaintiffs' award based on their "limited success" by a minimum of 75% and Plaintiffs' concession to reduce it by 20%. Sorenson, 239 F.3d at 1147 (affirming district court's refusal to reduce plaintiffs' award based on their failure to obtain all of the relief sought). Although the court appreciates Plaintiffs' counsel's concession and his efforts to be reasonable, the court finds that the proposed reduction is unwarranted here and therefore awards Plaintiffs' counsel all of his fees.

ORDER – 9

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' Motion for Award of Attorneys' Fees (Dkt. # 20) and orders Defendants to reimburse Plaintiffs $21,235.25 in attorneys' fees.

Dated this 21st day of June, 2005.

JAMES L. ROBART
United States District Judge